NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0479n.06

No. 18-1738

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 13, 2019
DEBORAH S. HUNT, Clerk

MICHAEL TAILLARD,

    Plaintiff-Appellant,

v.

THE ROOTO CORPORATION,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

OPINION

---

**BEFORE: KETHLEDGE, WHITE, and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Michael Taillard appeals the district court's grant of summary judgment to The Rooto Corporation ("Rooto") on his products-liability claim arising from a mishap with a jug of Rooto's drain opener product. Because Taillard failed to create a genuine issue of material fact about whether there was a reasonably safe alternative design available that Rooto should have used, we **AFFIRM**.

This case comes to us from a grant of summary judgment, so we recite the relevant facts in the light most favorable to Taillard, the non-moving party. *See Peffer v. Stephens*, 880 F.3d 256, 260 (6th Cir. 2018). Rooto manufactures consumer chemical products that are sold in retail stores. At issue in this case is a gallon jug of Rooto Professional Drain Opener, which is made of approximately ninety-three percent sulfuric acid, a highly caustic chemical. The product is packaged in a plastic jug, which in turn is enclosed in a plastic bag. The jug's opening is equipped with a two-piece cap assembly, consisting of a child-resistant threaded cap and a pressure-sensitive

adhesive seal. The adhesive seal is constructed of a foam-like plastic that re-seals the jug when the cap is tightened. There is no breakable seal affixed to the opening.

Several years before the events at issue in this case, the company that manufactures Rooto's drain opener caps submitted them for testing under the standards of the Consumer Product Safety Commission ("CPSC"), a federal agency that promulgates "consumer product safety standards" that are "reasonably necessary to prevent or reduce an unreasonable risk of injury associated with [consumer] product[s]." 15 U.S.C.A. § 2056(a). Specifically, "[h]ousehold substances containing 10 percent or more by weight of sulfuric acid . . . shall be packaged in accordance with the provisions of [16 C.F.R.] § 1700.15(a) and (b)." 16 C.F.R. § 1700.14(a)(9). After the testing was completed, the CPSC issued a certificate of compliance for the caps.

On June 30, 2016, Taillard, along with his wife and young children, visited a Shop n' Save store in Benzonia, Michigan and purchased a gallon jug of Rooto drain opener. Taillard placed the jug on the bottom rack of his grocery cart, approximately six inches from the ground. After Taillard and his family exited the store and made their way onto the asphalt parking lot, the jug tipped over the right-side edge of the bottom rack of the cart and struck the asphalt. The cap came off the jug, and the product began spilling out of the opening, melting the plastic bag.

According to Taillard, the product splashed onto the leg and foot of his four-year-old daughter, KT, who was standing near him on the right side of the grocery cart when the jug hit the asphalt. The child began crying in pain, and Taillard rushed her back into the store to find a sink and rinse the acid from her leg and foot. While Taillard was trying to help his daughter, some of the chemical dripped onto his own skin, burning him.

2

As a result of the burns, Taillard suffered infections. After he began using antibiotics to treat the infections, he also suffered a reaction to the antibiotics, which "left him with significant choreiform tremors." R. 1, PageID 3.

Taillard sued Rooto, alleging that the jug's cap design was defective and asserting claims for negligence, gross negligence, and breach of implied warranty.[1] At the close of discovery, Rooto moved for summary judgment on two grounds. First, Rooto argued that it was entitled to a presumption of non-liability under Michigan's products-liability statute because the cap complied with 16 C.F.R. § 1700.15, which Rooto contended is a relevant federal standard triggering the statutory presumption. Second, Rooto argued that Taillard could not show that the product caused his injuries.[2] The district court granted Rooto's motion on the first ground, concluding that § 1700.15 was a relevant standard, that the cap complied with it, and that Taillard had failed to rebut the presumption of non-liability. Taillard now appeals.

We review a grant of summary judgment de novo. *Peffer*, 880 F.3d at 262. In doing so, we view the evidence in the light most favorable to the non-moving party and ask whether that party has shown that there is a "genuine dispute as to any material fact." *Id.* (quoting Fed. R. Civ. P. 56(a)). If the answer is no, then the entry of summary judgment was proper. *See id.* "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Rooto argues that under Michigan Compiled Laws § 600.2946(4), it is entitled to a presumption of non-liability for injuries allegedly caused by its product's design, because the

---

[1] Taillard initially sued both on his own behalf and on behalf of KT as her next friend, based on injuries she allegedly sustained. KT's lawsuit was later voluntarily dismissed and is not at issue here.

[2] Rooto has abandoned its causation defense on appeal.

design complies with a relevant federal standard. Taillard disputes that Rooto is entitled to the presumption and also argues that even if the presumption applies, he has rebutted it.

However, we need not reach whether Rooto is entitled to Michigan's presumption of non-liability. Instead, we affirm summary judgment because Taillard has failed to raise a genuine issue of material fact about whether a reasonable alternative design was available that Rooto failed to use when manufacturing its cap.[3]

Under Michigan law, "[i]n a product liability action," a plaintiff must prove two elements. *See* Mich. Comp. Laws § 600.2946(2). First, the plaintiff must show "that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller." *Id.* Second, the plaintiff must show:

> [T]hat[] according to generally accepted production practices at the time the specific unit of the product left the control of the manufacturer or seller, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

*Id.*[4]

To establish that a reasonable alternative design existed, Taillard relied on the testimony of one expert, John Magee. Magee is the former owner of a company that competed with Rooto in the drain-opener market. To prepare for his deposition, Magee "examined exemplar jugs of

---

[3] Although the district court did not rely on this reasoning and Taillard argues that Rooto has forfeited the argument, we may address an issue not addressed by the district court if "the issue is presented with sufficient clarity and completeness and its resolution will materially advance the progress of this already protracted litigation." *Jackson v. City of Cleveland*, 925 F.3d 793, 812–13 (6th Cir. 2019) (citation omitted). And we may affirm on any basis supported by the record. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc*., 280 F.3d 619, 629 (6th Cir. 2002).

[4] We apply this standard to each of Taillard's three theories of liability—negligence, gross negligence, and breach of implied warranty—because Michigan law defines "product liability action" broadly as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product." Mich. Comp. Laws § 600.2945(h). "Production" is then defined as "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." *Id.* § 600.2945(i).

Rooto drain cleaner and their caps and seals," Appellant Br. at 10, and he then testified that Rooto's cap is unsafe:

> [W]hen [Rooto's] caps are on, assuming it's perfectly good and tight, they have a gap between the lip of their bottle and the bottom of their cap. And the reason this is a concern is that . . . if the bottle was to fall and hit directly on the cap, it would push in, which would cause the outer side cap to fall off . . . .

R. 58-9, PageID 637. Magee stated that his own company used a breakable seal under its caps that he believed resulted in superior protection.

Taillard contends that a breakable seal after the Magee model would have "prevented the harm" that occurred in this case. Mich. Comp. Laws § 600.2946(2). But even assuming that Magee's deposition testimony creates a genuine issue of material fact about whether the breakable seal would have prevented Taillard's accident, Taillard has failed to create a genuine issue of material fact about whether the alternative seal would not have "creat[ed] equal or greater risk of harm" or "significantly impair[ed] the usefulness or desirability of" Rooto's product. *Id.* And a products-liability plaintiff in Michigan must establish both of those elements.

For example, Taillard does not explain why the use of the breakable seal would not have led to more accidents than it prevented. The breakable seal cannot be re-sealed and therefore loses its protective power after the first use of the product; by contrast, Rooto's design includes a foam-like plastic that re-seals every time the cap is tightened on the jug. Although Magee testified that his company "d[id]n't have any failures" with "the seal that [he] ha[d] been using," R. 58-9, PageID 642, and that, when dropped from a height of five feet, the "seals didn't break" on his company's jugs of drain opener, *id.* at PageID 627, Magee offered no testimony regarding the drop-resistance of his product's packaging after the jug had been opened once and the seal broken. For instance, Magee did not testify that his company ever drop-tested once-opened jugs, lacking a seal, as opposed to only new, sealed jugs.

5

Another elemental deficiency in Taillard's case is his failure to explain why the breakable seal would not make the product less useful or desirable by, for instance, making new bottles more difficult to open purposely. *See* Mich. Comp. Laws § 600.2946(2). In sum, Taillard has not made out a prima facie case of defective design under Michigan law.

Therefore, we **AFFIRM** the district court's grant of summary judgment to Rooto.

**HELENE N. WHITE, Circuit Judge, dissenting**. The majority finds it unnecessary to address whether Michigan's product-liability statute entitles Rooto to a presumption of non-liability, and instead affirms on the alternative ground—not argued by the parties below and not addressed by the district court—that Taillard failed to show that there is a genuine dispute of material fact about whether there was an alternative design available to Rooto that would have prevented the accident and would have been equally safe and effective. Because the regulations Rooto relies on are not relevant to the events underlying this dispute, I disagree with the district court's determination that Rooto is entitled to a presumption of non-liability. For that reason, I would remand for further proceedings. I would not rule on the adequacy of Taillard's expert's opinion as expressed in the deposition taken by Rooto. Although there may be problems with that testimony, I would leave it to the parties and the district court to flesh them out.

*Presumption of Non-Liability.* Michigan's product liability statute creates a rebuttable presumption of non-liability where "the aspect of the product that allegedly caused the harm was in compliance with the standards relevant to the event causing the death or injury." Mich. Comp. Laws § 600.2946(4). As the district court noted, Rooto's product complied with 16 C.F.R. § 1700.15(a) and (b). However, compliance with a federal standard does not, on its own, entitle Rooto to a presumption of non-liability. For the presumption to apply, the standard must be relevant to the event causing the injury underlying this dispute. That event was the unintended spill of Rooto's product after its container fell from a grocery cart.

The district court found that the standards created by § 1700.15 are relevant, stating that the regulation applies where someone is injured because of "an unintended release of . . . the caustic product from its container into the environment or onto people or into people." R. 65, PID 885. This is an overbroad characterization of the scope of § 1700.15. The purpose of the regulation is

explicit: "[t]o protect children from serious personal injury or serious illness resulting from handling, using, or ingesting household substances." § 1700.15. To that end, the regulation establishes specific standards for the "**child-resistant effectiveness**" of the packaging of hazardous substances. § 1700.15(b)(1). It is designed to prevent the type of injury that may occur, for example, when a child is able to open a bottle containing a hazardous product. It does not establish standards intended to prevent a container from spilling its hazardous contents when it is dropped or falls from a modest height, which is what occurred here.

Thus, I conclude that § 1700.15 is not a relevant standard and Rooto is not entitled to a rebuttable presumption of non-liability under § 600.2946(4).[1]

*Reasonable Alternative Design.* The majority concludes that Taillard has failed to show that there is a genuine issue of material fact about whether a reasonable alternative design was available to Rooto. The majority states that Taillard has not explained why the use of the breakable seal would not have led to more accidents than it prevented. I disagree. Magee testified that his former company conducted drop tests on bottles using the Magee seal at heights from one to five or ten feet and that the seals did not break and there was no leakage. He further testified that after experimenting with bottles using a pressure-based cap/seal mechanism—the same mechanism used by Rooto—his company encountered problems with leakage upon drop testing and received complaints from consumers about "leaking bottles". R. 58-9, PID 634. Magee went on to explain that after switching to the Magee seal, the company had no issues with leaks. This testimony speaks to whether the alternative seal would have prevented Taillard's injury and to whether the alternative seal would create the same or a greater risk of harm as the one used by Rooto.

---

[1] This is not to say that evidence that Taillard's alternative design would not comply with the regulations would be irrelevant. Such evidence would undermine the feasibility of the proposed alternative design.

Finally, the long-standing use of that design by a major competitor in the drain-opener market, as testified to by Magee, is some evidence that the design would not significantly impair the usefulness or desirability of Rooto's product.[2]

Accordingly, because on this record Taillard has presented at least some evidence that a reasonable alternative design existed—which evidence was not challenged below as inadequate separate and apart from the presumption—I would remand the issue to the district court.

---

[2] Magee testified that his former company has used the Magee seal for the last 15 years.